I cannot agree with the rationale of the majority opinion. Prior to 1952, the Louisiana Employer's Liability Act covered only injury or death which was the result of an accident. The consequences of industrial disease were deliberately excluded, however, the compensation principle has now been expanded in this State, by virtue of Act 532 of 1952, so as to recognize that the cost of disability or death of employees resulting from an occupational disease is an appropriate charge to be borne by the industry. The foregoing act provides that "an occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed" and among the six diseases enumerated therein is "dermatosis." I am convinced that the Legislature, in enacting this amendment to the Employer's Liability Act, LSA-R.S.23:1031.1, intended to and literally did encompass the problem which the facts, as revealed by the author of the court's opinion, posed for our consideration.
This opinion found as a fact that the very nature of plaintiff's occupation compelled his contact with Varsol or a similar detergent and, in consequence thereof, he incurred three attacks of dermatitis which disabled him initially from November 22, 1952 to January 4, 1953; he returned to work and on March 25, 1953, he again incurred dermatitis and was disabled to April 7, 1953; he resumed his employment and on May 30, 1953, he incurred the final attack of dermatitis which disabled him to August 8, 1953, and that since that time he has had no recurrence.
Both the facts and the expert testimony appearing in the record reflect that the reason plaintiff has not had a recurrence of dermatitis is because he has not resumed *Page 573 
his employment and he has thereby avoided any contact with Varsol or similar detergents; this very significant conclusion is borne out by the following statement contained in the majority opinion:
 "It seems to be the consensus of opinion of the experts that should the plaintiff return to any sort of work which would require that he come into contact with such a detergent as Varsol, he would probably again suffer from dermatitis with the same disabling effect."
Defendant's counsel insisted both in brief and oral argument that the reason plaintiff may contract dermatitis again if he resumes his employment is that his skin, naturally sensitive since birth, gets thinner, drier and more sensitive as he advances in age. The court, apparently impressed with this statement, observed "it (dermatitis) resulted from a congenital condition of his skin and therefore cannot be said to have come about `as a result of the nature of the work performed', as is required by the occupational disease amendment of the compensation law." I will concede that the plaintiff congenitally possessed a sensitive skin, however, I cannot conclude therefrom that the refusal to award him compensation should be predicated on the individual susceptibility of the skin of this employee to the disease. I am of the opinion that the more enlightened, reasonable and liberal view of this problem is expressed in Re Scrogham (Associated Seed Growers, Inc., v. Scrogham), 52 Wyo. 232, 73 P.2d 300, and reiterated in Wright v. Wyoming State Training School, 1953, 71 Wyo. 173,255 P.2d 211, 217, and quoted in the majority opinion:
 "* * * the right of compensation does not rest on the condition and health of the employee or his freedom from liability to injury through constitutional weakness or latent tendency, but the hazard of the employment acting upon the particular employee in his then state of health is compensated without distinction between employees as regards their state of health. Decisions of the courts of both England and America were reviewed extensively in reaching this conclusion."
The Louisiana Reports do not reflect any jurisprudence emanating from this amendment to the Employer's Liability Act and this is due obviously to its relatively recent enactment, however, in more than twenty-five States statutory provision has been made for specific groups of compensable disease and the reports of these States abound with decisions both refusing and awarding compensation for total permanent disability predicated on skin diseases. No useful purpose would be served in quoting liberally from these reports — stare decisis has no place in our jurisprudence — the case merely acts as a guide and, therefore, the courts of Louisiana reserve unto themselves a broad latitude for the individualization of each case according to the true civil concept.
The plaintiff is not presently afflicted with dermatitis, but, as related above, the opinion of the experts reveals that a resumption of his employment will again disable him. It is my opinion that the fundamental question which this case initially posed for our consideration was — should the plaintiff, under the penalty of the deprivation of compensation or loss of wages, be compelled, after each successful bout with dermatitis, to resume his employment and then endure intermittent attacks of the disease ad infinitum? I think not — the law is never consciously a party to such an absurd or inhuman result nor does it penalize an individual because, in the course of his seventeen years of employment, he becomes afflicted with infirmities which naturally appear with age, such as a drier and more sensitive skin. The philosophy expressed in the foregoing statement has so long been a cardinal precept of justice that the memory of man hardly runneth to the contrary.
I believe that the judgment of the lower court which awarded plaintiff compensation was correct and should have been affirmed.
I respectfully dissent. *Page 574